# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW TERRY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 5665 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On October 6, 2014, I granted a motion filed by the Commissioner under Fed.R.Civ.P. 60(b) and 62.1 in the case of *Triplett v. Colvin*, 12-CV-4382. Some eleven months after the ruling affirming the ALJ's decision in that case, and after the case had been pending before the Seventh Circuit Court of Appeals for eight months, the Commissioner filed an "Emergency Motion" asking that the court indicate that it would grant the Commissioner's motion to remand the case if the appellate court remanded the matter for that purpose. The motion was unsupported by any citation to case law. The motion didn't indicate what the "emergency" was, only that the Commissioner had – again, eight months after the case had landed in the appellate court, eleven months after the decision in the district court, and well over two years after the case had been filed – given the case "further consideration" and determined it should be remanded. *Triplett v. Colvin*, 12-CV-4382 [Dkt. #47].

The filing was somewhat surprising, especially so late in the game and, indeed, after the game was over in district court. When the courtesy copy of the motion was delivered to chambers,

counsel explained that there had been "drastic changes"[1] in the law that prompted the Commissioner's change of heart. Counsel was advised that there had been no mention of any such case law in the motion and that the motion could not be granted without such support. Counsel filed an appendix to the motion immediately thereafter, citing to *Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014); *Murphy v. Colvin*, 759 F.3d 811 (7th Cir. 2014); *Hanson v. Colvin*, 760 F.3d 759 (7th Cir. 2014); *Moon v. Colvin*, 763 F.3d 718 (7th Cir. 2014); *Goins v. Colvin*,764 F.3d 677 (7th Cir. 2014); *Browning v. Colvin*, 766 F.3d 702 (7th Cir. 2014). *Triplett v. Colvin*, 12-CV-4382 (Dkt. # 50). Among the issues the Commissioner represented as affected by these cases in *Triplett* were the ALJ's consideration of the effects of obesity on the claimant's capacity for work, the ALJ's treatment of medical opinions, the ALJ's assessment of the claimant's subjective complaints, residual functional capacity, and the use of vocational expert testimony. *Triplett v. Colvin*, 12-CV-4382 (Dkt. # 47, at 2). Since *Triplett*, I have conducted regular, initial reviews of Social Security Disability cases that come before me in an effort to eliminate the possibility of months or even years of waste if there are any apparent issues with the ALJ's opinion that might, under further consideration by the Commissioner, prompt an agreed remand.

In this case, there are some issues, which recur frequently in these cases, that are apparent from initial review of the administrative record. Immediately apparent from review of the record is is one of the same issues that prompted the Commissioner to remand the *Triplett* case even though the plaintiff in that case waived the issue: the ALJ's consideration of plaintiff's obesity. See *Triplett v. Colvin*, 2014 WL 4978658, at *2 (N.D. Ill. 2014). The plaintiff, with a BMI ranging from 37 to

---

[1] This was the phrase used; obviously, if the cases the Commissioner submitted did not represent changes, but simply restatements of existing law, the Commissioner would have arrived at a determination that a remand was necessary well before over two years had passed.

42 (R. 91, 331, 379, 385), is considered morbidly obese or nearly so. *See Browning v. Colvin*, 766 F.3d 702, 704 (7th Cir. 2014). The ALJ found that plaintiff's obesity was a severe impairment (R. 60), but fails to mention it in his analysis of plaintiff's impairments and their effects on his ability to work. The failure to consider obesity is a red flag for the Seventh Circuit. *Browning*, 766 F.3d at 706; *Goins*, 764 F.3d at 677 (discussion and collected cases).

Another recurring issue present in this case is the question of concentration, persistence, and pace, or "CPP." The ALJ found that plaintiff has moderate restrictions on his ability to maintain CPP. (R. 62). It's not clear from the ALJ's decision how he purported to account for that in his residual functional capacity finding. He did find plaintiff was limited to "simple work" (R. 62), but the Seventh Circuit has repeatedly explained that this does not do the trick. In *Yurt* – among the cases the Commissioner said prompted remand in *Triplett* – and a number of other cases, the Seventh Circuit has taken ALJs to task for attempting to accommodate concentration problems with simple work or routine work or unskilled work. The fact that a job might be simple or easy to learn does not mean that someone who has difficulty maintaining concentration or focus can perform it. *See, e.g., Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015)(hypothetical question positing a person capable of performing "simple, routine, and repetitive tasks" but unable to perform work involving "fast paced production" did not account for difficulties maintaining concentration, persistence, and pace); *Yurt*, 758 F.3d at 858–59 ("we have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace."); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010)("In most cases ... employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's

consideration those positions that present significant problems of concentration, persistence and pace.").

Indeed, the vocational expert's testimony at the administrative hearing highlights the problem with accounting for restrictions on CPP with a limitation to simple work. The vocational expert cited two jobs that a person limited to simple work could perform: cleaner and mail clerk. (R. 46-47). But he testified that an individual who could not keep up with time-based performance expectations could not do these jobs. (R. 48). They had to be alert, on task, and focused 92-98% of the day, excluding break time. (R. 48-49). If a person has a moderate restriction on their ability to maintain CPP, it would seem that their attention would stray more often that 2-8% of the day. *See Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017); *O'Connor–Spinner v. Colvin*, 832 F.3d 690, 699 (7th Cir. 2016)("If a moderate impairment on maintaining concentration, persistence, and pace equates to being off task at least 15% of the time then, according to the vocational expert, [plaintiff] is essentially unemployable."). The Dictionary of Occupational Titles does not suggest anything different. For the occupation of mail clerk, the DOT indicates that the most important ability to speed in comparing things, as well as wrist-finger speed. https://occupationalinfo.org/onet/57302.html. Sounds like a job that would demand the ability to maintain concentration, persistence, and pace.[2]

Judicial resources are scarce. *See Chicago Observer, Inc. v. City of Chicago*, 929 F.2d 325, 329 (7th Cir. 1991) (Litigation is costly not only for the litigants but also for parties in other cases

---

[2] Moreover, the ALJ also determined that plaintiff had moderate restrictions on his ability to maintain social functioning (R. 61), and accounted for this by limiting plaintiff to jobs with no public contact. (R. 62). Yet, for the occupation of cleaner, the DOT lists "customer and personal service" as the most important aspect of the job. https://occupationalinfo.org/onet/67002.html.

waiting in the queue for judicial attention.); *see also West v. West*, 694 F.3d 904, 906 (7th Cir. 2012);

*Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). Rather than continuing through

the exercise of the parties briefing this case and the court issuing a ruling -- an exercise that proved

to be a waste of judicial resources and the parties' lawyers' time and efforts in *Triplett* – only to have

the Commissioner review its actions months later and determine a remand is appropriate, the

Commissioner is ordered to review the matter now, with an eye toward its motion in *Triplett*. If the

Commissioner determines to proceed with this litigation then, within 14 days of this order, the

Commissioner must file a brief statement distinguishing the ALJ's decision in this matter from the

decision in *Triplett* and explaining how, unlike the *Triplett* decision, the ALJ's decision here does

not run afoul of the aforementioned Seventh Circuit precedent. If, within that 14 days, the

Commissioner determines it best not to proceed, it should so inform the court. *See Pestereanu-Gere*

*v. Berryhill*, 17 C 1719 [Dkt. ## 16, 21] (N.D.Ill. July 6, 2017).

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 10/10/17